| | |
|---|---|
| **JASON H. KLOEPFER,** ) | |
| **ALISON M. MAHLER,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| **CHEROKEE COUNTY SHERIFF'S** ) | |
| **DEP'T, ET AL.,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on a Partial Motion to Dismiss, filed by Defendants Cherokee County Sheriff's Department, Dennis Dore, Adam Erickson, Paul Fry, J.T. Gray, Jason Hall, Justin Jacobs, Don Latulipe, Mitchell Morgan, Drew Payne, Nolan Queen, Dustin Smith, Jessica Stiles, Milton Teasdale, Cody Williams, David Williams, (Doc. No. 21), and on a separate Motion to Dismiss, filed by Defendant Darryl Brown, (Doc. No. 24). Plaintiffs responded in opposition to the motions, and Defendants replied. (Doc. Nos. 28, 29, 31, 32). For the following reasons, the Partial Motion to Dismiss will be **GRANTED IN PART** and **DENIED IN PART**, and Defendant Brown's Motion to Dismiss will be **GRANTED**.

### I. BACKGROUND

#### A. Summary and Procedural Background

Plaintiffs Jason Kloepfer and Alison Mahler bring this Complaint arising out of a shooting on December 15, 2022, against various Defendants, including officers of the Eastern Band of Cherokee Indian Police Department ("EBCIPD"); the Cherokee County Sheriff's Department ("CCSD"); Cherokee County Sheriff Dustin Smith, and CCSD deputies Justin Jacobs, David Williams, Milton Teasdale, Mitchell Morgan, Drew Payne, Dennis Dore, Cody

1

Williams (collectively "CCSD Supervisors"); CCSD deputies Nolan Queen, Jessica Stiles, J.T. Gray, Jason Hall, Don Latulipe, Adam Erickson, and Paul Fry (along with CCSD Supervisors, "CCSD Defendants"); and former CCDS attorney Darryl Brown. Plaintiffs sue CCSD Defendants in both their individual and official capacities.

Plaintiffs bring the following claims: (1) violation of 42 U.S.C. § 1983 against all CCSD Defendants except CCSD itself (Claim One); violation of 42 U.S.C. § 1983 with Monell (435 U.S. 658 (1978)) liability against CCSD and CCSD Supervisors (Claim 2); negligence and negligence per se against CCSD Defendants and CCSD itself (Claim 3); gross negligence against CCSD and CCSD Defendants (Claim 4); abuse of process by CCSD, CCSD Supervisors, and Fry (Claim 5); malicious prosecution by CCSD, CCSD Supervisors, and Fry (Claim 6); unlawful detention against CCSD Defendants and CCSD itself (Claim 7); defamation against CCSD, Sheriff Smith, and Brown (Claim 8); intrusion and invasion of privacy against CCSD Defendants and CCSD itself (Claim 9); negligent infliction of emotional distress against CCSD Defendants and CCSD itself (Claim 10); intentional infliction of emotional distress against CCSD Defendants and CCSD itself (Claim 11); negligent hiring and supervision/retention by CCSD and CCSD Supervisors (Claim 12); trespass against CCSD Defendants and CCSD itself (Claim 13); civil conspiracy endorsed and ratified after the fact against CCSD Defendants and CCSD itself (Claim 14); assault and battery against CCSD, CCSD Supervisors, and Queen (Claim 15); and punitive damages against CCSD Defendants and CCSD itself (Claim 25).

CCSD and CCSD Defendants have filed a partial motion to dismiss, arguing that: (1) Defendant CCSD must be dismissed because it is not a sueable entity; (2) all Section 1983 official capacity claims against the individual Defendants must be dismissed as duplicative except for the claim against Sheriff Smith; (3) the claim against Sheriff Smith is barred because

Smith has not waived governmental immunity; (4) the negligence-based state tort claims against the individual Defendants must be dismissed based on public official immunity; (5) Defendants Queen, Stiles, Gray, Hall, Latulipe, and Fry must be dismissed because Plaintiff does not allege that any of these Defendants were present when Kloepfer was shot; and (6) the unlawful detention claim should be dismissed as to all Defendants because Plaintiffs do not state a cognizable claim for unlawful detention.

Defendant Brown, former CCDS attorney, has filed a separate motion to dismiss the claims against him for defamation and punitive damages. Defendant Brown asserts that Plaintiff Kloepfer's[1] claim should be dismissed based on (1) the defense of qualified immunity; (2) the defense of sovereign immunity; (3) the doctrine of public official immunity; (4) absolute privilege; (5) qualified privilege; (6) failure to plead the elements of defamation; (7) failure to support the claim for joint and several liability; and (8) failure to state a claim for punitive damages.

### B. Plaintiff's Allegations

On December 12, 2022, Plaintiffs' neighbor (Ms. Floyd) called 911 and told the operator that her neighbor, Plaintiff Jason Kloepfer, was setting off fireworks and threatening to kill the entire neighborhood. (Doc. No. 1 ¶ 60). Ms. Floyd also informed the operator that Kloepfer fired ten rounds from a gun. (Id. ¶ 77). CCSD deputies Dennis Dore, Adam Erickson, and Cody Williams arrived at Plaintiffs' property around 11:18 p.m. (Id. ¶ 91). Ms. Floyd also reported that Kloepfer had been arguing with his girlfriend, Plaintiff Alison Mahler, and that argument had ceased following the gunshots. (Id. ¶ 115).

CCSD deputies knocked on Plaintiffs' door around 11:20 p.m. to no response. (Id. ¶¶

---

[1] The defamation claim is brought only by Kloepfer.

3

123–27, 133–34). At 11:55 p.m., Dore, Erickson, and Cody Williams contacted CCSD Lieutenant Mitch Morgan with their observations. (Id. ¶ 144). Shortly thereafter, Dore began obstructing Plaintiffs' surveillance cameras by "bagging" them with cloth. (Id. ¶ 146). At 11:58, Morgan informed dispatch that the subject was barricaded and requested the EBCIPD SWAT team. (Id. ¶ 148). Lieutenant Morgan also requested that the dispatcher contact the on-call investigator to initiate a search warrant "to justify CCSD presence" on Plaintiffs' property. (Id. ¶ 159). CCSD Captain David Williams contacted Sheriff Smith, who agreed that CCSD should ask the EBCIPD SWAT team to assist. (Id. ¶ 164).

CCSD Lieutenant Drew Payne arrived at Plaintiffs' property at 12:45 a.m., and Lieutenant Morgan arrived at 1:03 a.m. (Id. ¶¶ 177, 178). CCSD contacted ECBIPD SWAT team commander Scott Buttery at 12:33 a.m. (Id. ¶ 179). Around 1:03 a.m., Buttery contacted dispatch to initiate a new Mutual Aid Agreement ("MAA") between ECBIPD and CCSD.[2] (Id. ¶ 186). At 1:09 a.m., Captain David Williams arrived at Plaintiffs' property. (Id. ¶ 192). Lieutenant Morgan then instructed Erickson to walk to Ms. Floyd's house and verify her accusations. (Id. ¶ 206). Floyd played a video for Erickson around 2:00 a.m. (Id. ¶ 208). Plaintiffs contend that this video disproved Floyd's initial story that Kloepfer had been shooting his gun and threatening to kill his neighbors. (Id. ¶ 217).

After Erickson viewed the video, CCSD Lieutenant Milton Teasdale applied for a warrant to search Plaintiffs' property. (Id. ¶¶ 238, 256). Plaintiff contends that Teasdale's affidavit supporting his search warrant was based on Ms. Floyd's report, which Teasdale by then knew to be false. (Id. ¶¶ 245–46).

Around 3:00 a.m. Sheriff Smith and ECBIPD officer Roger Neadeau, Jr., executed the

---

[2] A mutual aid agreement allows cooperation between law enforcement agencies in different jurisdictions. See N.C. GEN. STAT. §§ 1E-10, 160A-288.

MAA. (Id. ¶¶ 270–71). At 4:54 a.m. the ECBIPD SWAT team arrived at Plaintiffs' property and tossed a drone robot through the door of Plaintiffs' home. (Id. ¶ 300). Several minutes later, at 4:57 a.m., the robot woke Plaintiffs, who were sleeping in their bed. (Id. ¶ 307). Plaintiffs heard Sergeant Dore instruct Kloepfer to exit the house with his hands up. (Id. ¶ 309). Kloepfer picked up the drone and a cigarette and opened the door. (Id. ¶¶ 316–17, 322). ECBIPD SWAT officers Messer, Harris, and Ferguson fired 15 shots, two of which struck Kloepfer. (Id. ¶¶ 325–26). Mahler was not hit. (Id. ¶ 332). CCSD deputies yelled at Mahler to walk down the ramp, handcuffed her, and put her in the back of a patrol SUV. (Id. ¶ 339–40). Mahler was transported to the Sheriff's Office where she was kept for hours in a small room under locked guard. (Id. ¶ 365). After answering questions, she was released several hours later. (Id. ¶¶ 365, 367).

After SWAT officers shot Kloepfer, Teasdale and Dore entered Plaintiffs' home. (Id. ¶ 355). Teasdale dropped the warrant on a table and announced, "search warrant." (Id.). Sheriff Smith issued a press release, stating that he was not at the scene and that Kloepfer argued with officers before the shooting. (Id. ¶¶ 348, 375–80). Kloepfer was charged with communicating threats and resisting a public officer, but the charges were dismissed on March 1, 2023. (Id. ¶¶ 369, 373).

On January 18, 2023, Kloepfer released his home surveillance camera videos, proving Defendants' accounts false. (Id. ¶ 407). Sheriff Smith subsequently issued a new press release, stating that the initial release relied on ECBIPD's information. (Id. ¶ 408).

Plaintiff's defamation claim pertains to the press release prepared by Defendant Brown, former attorney for Cherokee County Sheriff's Department. That release, prepared and published by Brown on December 13, 2022, read in relevant part:

> Recognizing there was an armed suspect present and the potential for a hostage situation, CCSD obtained a search warrant and requested assistance from

5

> EBCIPD SWAT. The suspected shooter engaged in a verbal altercation with officers and emerged from a camper trailer and confronted officers. Members of the SWAT team fired upon the suspect and wounded him. … After consultation with the DA, Jason has been charged with Communicating Threats and Resist, Obstruct, and Delay. The matter remains under investigation and more charges may follow.

(Id. ¶ 377).

## II. STANDARD OF REVIEW

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6).

Faced with a motion to dismiss challenging the Court's subject matter jurisdiction under FED. R. CIV. P. 12(b)(1), Plaintiff bears the burden to show that federal jurisdiction is proper. See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc., 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).

Faced with a motion to dismiss challenging personal jurisdiction under FED. R. CIV. P. 12(b)(2), Plaintiff bears the burden to show by a preponderance of the evidence that this Court has personal jurisdiction over Defendants. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). A plaintiff need only "make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Id. (citation omitted).

Reviewing a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court must accept as true all factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,"

and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

### III. DISCUSSION

CCSD and CCSD Defendants have filed a partial motion to dismiss, arguing that: (1) Defendant CCSD must be dismissed because it is not a sueable entity; (2) all Section 1983 official capacity claims against the individual Defendants must be dismissed as duplicative except for the claim against Sheriff Smith; (3) the claim against Sheriff Smith is barred because Smith has not waived governmental immunity; (4) the negligence-based state tort claims against the individual Defendants must be dismissed based on public official immunity; (5) Defendants Queen, Stiles, Gray, Hall, Latulipe, and Fry must be dismissed because Plaintiff does not allege that any of these Defendants were present when Kloepfer was shot; (5) the claim for punitive damages must be dismissed; and (6) the unlawful detention claim must be dismissed as to all Defendants because Plaintiffs do not allege a cognizable unlawful detention claim.

Defendant Brown has filed a separate motion to dismiss, seeking dismissal of the claims against him for defamation and punitive damages.

In their response to Defendants' partial motion to dismiss, Plaintiffs concede that dismissal is appropriate for the following CCSD Defendants and claims: (1) Cherokee County Sheriff's Department in its entirety; (2) all official capacity federal claims as to the Section 1983 claim for relief against all CCSD Defendants except Sheriff Smith, and all official capacity federal claims as to the Section 1983 Monell claim against all CCSD Supervisors except Sheriff

7

Smith; (3) all individual capacity claims against all CCSD Supervisors as to the Section 1983 Monell claim; (4) all official capacity claims against all CCSD Defendants except Sheriff Smith as to the claims for negligence, gross negligence, abuse of process, malicious prosecution, unlawful detention, intrusion and invasion of privacy, negligent infliction of emotional distress, negligent hiring and supervision/retention, trespass, civil conspiracy, and assault and battery; and (5) all CCSD Defendants in their official capacity as to the punitive damages claim.

Thus, the only remaining issues are (1) whether Plaintiff states a claim against Queen, Stiles, Gray, Hall, Latulipe, and Fry in their individual capacities for excessive force in violation of Section 1983, as well as various state law claims[3]; (2) whether the insurance coverage attached to the Defendants' motion to dismiss waives immunity for Sheriff Smith in his official capacity for the state tort claims; (3) whether Defendants are entitled to public official immunity in their individual capacity on the claims for negligence, negligent infliction of emotional distress, and negligent hiring and supervision/retention; and (4) whether Plaintiffs state a claim for unlawful detention.

First, the Court finds that Sheriff Smith has not waived governmental immunity by virtue of the North Carolina Association of County Commissioner ("NCACC") liability insurance policy attached to Defendants' motion to dismiss.[4] Plaintiffs acknowledge that the law supports Defendants' argument that sovereign immunity bars all official capacity claims against Sheriff Smith. Plaintiffs ask the Court, however, to go against precedent because the "masequerade of

---

[3] Defendants contend that Plaintiffs make no argument opposing the dismissal of the individual capacity claims for civil conspiracy and this claim is therefore abandoned. The Court declines to dismiss the civil conspiracy claim at this time.

[4] Plaintiffs are correct that the Sheriff's surety bond waives immunity only to the extent of the bond. (Doc. No. 28, p. 4). See Summey v. Barker, 142 N.C. App. 688, 690 (2001). The presence of the surety bond, however, does not prevent the Court from holding that there is no waiver of governmental immunity on the liability policy. See McMahan v. Griffin, No. 1:22cv28 et al., 2023 WL 5341285, at **25–26 (W.D.N.C. Aug. 17, 2023) (unpublished).

purchasing a policy that immediately cancels itself out violates the unambiguous language from the statute" and "the law does not allow a county to buy meaningless insurance." (Doc. No. 28 at 8). North Carolina appellate courts have rejected both arguments. In Estate of Earley v. Haywood County Department of Social Services, 204 N.C. App. 338, 343 (2010), the Court upheld an identical exclusion against the "masquerade" and "cancel…out" arguments advanced by Plaintiffs:

> We acknowledge the arguably circular nature of the logic employed in Patrick. The facts are that the legislature explicitly provided that governmental immunity is waived to the extent of insurance coverage, but the subject insurance contract eliminates any potential waiver by excluding from coverage claims that would be barred by sovereign immunity. Thus, the logic in Patrick boils down to: Defendant retains immunity because the policy doesn't cover his actions and the policy doesn't cover his actions because he explicitly retains immunity. Nonetheless in this case, as in Patrick, where the language of both the applicable statute and the exclusion clause in the insurance contract are clear, we must decline Plaintiff's invitation to implement "policy" in this matter. Any such policy implementation is best left to the wisdom of our legislature.

In Magana v. Charlotte-Mecklenburg Bd. of Educ., 183 N.C. App. 146, 149 (2007), the North Carolina Court of Appeals rejected the same argument Plaintiffs advance here, stating, "The plaintiffs have argued that such a reading of the policy renders it meaningless, offering no coverage for any eventuality. We cannot agree. There are several instances where immunity is not available either because of federal or state statutes, or because of exceptions to the sovereign immunity doctrine." See also Russ v. Causey, 732 F. Supp. 2d 589, 611 (E.D.N.C. 2010) (rejecting Plaintiff's claim that exclusion in same policy at issue in this case was "illusory"). Sheriff Smith has not waived sovereign immunity by operation of the NCACC liability policy.

Next, the Court finds that to the extent Defendants are sued in their individual capacities they are entitled to public official immunity only as to claims sounding in negligence. A public official is immune from personal liability for "mere negligence in the performance of his duties,

9

but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." Slade v. Vernon, 110 N.C. App. 422, 428 (1993). Thus, Plaintiff's claims for negligence, negligent infliction of emotional distress, and negligent hiring against Defendants in their individual capacities must be dismissed. See McCullers v. Lewis, 265 N.C. App. 216, 222 (2019) ("Since public official immunity may only insulate public officials from allegations of mere negligence, only those of Plaintiffs' causes of action sounding in negligence come within the doctrine's reach."); Shaw v. Stroud, 13 F.3d 791, 803 (4th Cir. 1994) (stating that "[a] negligent infliction of emotional distress claim, by its very definition, necessarily alleges only negligence. Therefore, [defendant public official] is absolutely immune" from this claim.); Hines v. Johnson, No. 1:19cv515, 2020 WL 1516397, at *21 (M.D.N.C. Mar. 20, 2020) (unpublished) (granting Defendants' motion to dismiss negligent infliction of emotional distress claim based on public official immunity). Plaintiffs' negligence claims are dismissed.

Next, Defendants seek dismissal of Defendants Queen, Stiles, Gray, Hall, Latulipe, and Fry on the ground that Plaintiffs have not alleged that these defendants were present when ECBIPD officers shot Plaintiff Jason Klopfoer. Defendants contend that Plaintiffs have alleged only that these defendants were employed by the Sheriff's Office, and Fry is only alleged to have taken a warrant out against Kloepfer after the shooting. Nevertheless, given the liberal pleading standards of Iqbal and Twombly, the Court will allow the claims against these Defendants to proceed to discovery. If Plaintiffs learn through discovery that any of these Defendants were not involved in the alleged conduct underlying Plaintiffs' claims, Plaintiffs shall voluntarily dismiss these Defendants. The Court denies Defendants' motion to dismiss the claims against Defendants Queen, Stiles, Gray, Hall, Latulipe, and Fry.

10

Case 1:23-cv-00158-MOC-WCM   Document 33   Filed 12/04/23   Page 10 of 17

Next, Plaintiffs allege that CCSD Defendants detained Plaintiff Mahler against her will after officers shot Kloepfer. This allegation gives Defendants "fair notice" of the claim and facts supporting it. The Court will deny the motion to dismiss Plaintiffs' unlawful detention claim at this time.

As to the punitive damages claim against Defendants in their individual capacities, the Court denies the motion to dismiss because the Court is allowing some substantive claims to go forward. However, punitive damages based on any official capacity claims are dismissed. See Newport v. Fact Concerts, 453 U.S. 247, 266–67 (1981) (holding that a municipality is immune from punitive damages under 42 U.S.C. § 1983); Long v. City of Charlotte, 306 N.C. 187, 208 (1982) (holding that punitive damages are not allowed against governmental bodies).

Plaintiff's defamation claim is based on a statement made in a press release that Defendant Brown prepared and published on December 13, 2022:

> Recognizing there was an armed suspect present and the potential for a hostage situation, CCSD obtained a search warrant and requested assistance from EBCIPD SWAT. The suspected shooter engaged in a verbal altercation with officers and emerged from a camper trailer and confronted officers. Members of the SWAT team fired upon the suspect and wounded him. … After consultation with the DA, Jason has been charged with Communicating Threats and Resist, Obstruct, and Delay. The matter remains under investigation and more charges may follow.

(Doc. No. 1 ¶ 377). When he prepared and published the statement, Defendant Brown was the County Attorney for Cherokee County, North Carolina and charged with providing legal advice to CCSD. As such, he was a "public official."

"The defense of public official immunity is a derivative form of governmental immunity. Public official immunity precludes suits against public officials in their individual capacities and protects them from liability as long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official

11

authority, and acts without malice or corruption." Mitchell v. Pruden, 251 N.C. App. 554, 559 (2017). "Thus, a public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt."[5] Wilcox v. City of Asheville, 222 N.C. App. 285, 288 (2012). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Mitchell, 251 N.C. App. at 559.

"It is well settled that absent evidence to the contrary, it will always be presumed that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law. This presumption places a heavy burden on the party challenging the validity of public officials' actions to overcome this presumption by competent and substantial evidence." Strickland v. Hedrick, 194 N.C. App. 1, 10 (2008). Evidence to rebut this presumption "must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise." Mitchell, 251 N.C. App. at 560 (citation omitted). A conclusory allegation that a public official acted maliciously or corruptly is insufficient to withstand a motion to dismiss; the facts alleged must support such a conclusion. Doe v. Wake Cnty., 264 N.C. App. 692, 695–96 (2019).

Plaintiff Kloepfer alleges two theories of defamation claims against Brown: (1) that he "failed to exercise ordinary care in order to determine whether the statements were false" and "should have known" the Subject Statement was false; or (2) that he "knew" the statements were false. (Doc. No. 1 ¶¶ 560–61). The first category sounds in negligence. Because public officials "cannot be held individually liable for damages caused by mere negligence in the performance of their governmental or discretionary duties ....," any negligence claim must be dismissed. Meyer

---

[5] Public officer immunity extends to defamation claims. Dempsey v. Halford, 183 N.C. App. 637 (2007).

12

v. Walls, 347 N.C. 97, 112 (1997).

To the extent Plaintiff alleges Defendant Brown published the statement while knowing it was false, Plaintiff does not sufficiently allege malice as to Defendant Brown. As a public officer, Defendant Brown is entitled to the presumption that he discharged his duties on the morning or day of December 13 in his role as the Sheriff's Department attorney. Threadbare recitals that Defendant Brown "knew" statements made on December 13 were false when made are too conclusory to survive the Twombly and Iqbal standard. So too is the conclusory allegation that his conduct was "illegal, reprehensible, egregiously wrongful, reckless and willful." (Doc. 1 ¶ 563). Thus, Defendant Brown is entitled to public official immunity against the defamation claim.

Alternatively, absolute privilege bars Plaintiff Kloepfer's claims against Defendant Brown. Plaintiffs allege that on December 13, Lieutenant Tisdale appeared before Magistrate Postell and presented information under oath that the Cherokee County Communications Center received a 911 call from a neighbor regarding gun shots, arguing, screaming, and other details. (Id. ¶ 245); (2) that a search warrant was issued at 2:14 a.m. (Doc. 1 at p. 4; ¶ 245); (3) that, later on December 13, various CCSD officers appeared before Magistrate Postell and provided further sworn statements to him regarding Plaintiff Kloepfer;[6] (4) that on December 20, 2022, CCSD

---

[6] The sworn statements alleged were (1) by Deputy Frye (that "Jason Kloepfer threatened to physically injure the person of Emily Floyd on December 13, 2022" and that "such threat was communicated to Emily Floyd by stating that he was going to kill the neighbors and the threat was made in a manner and under circumstances which would cause a reasonable person to believe that the threat was likely to be carried out and the person threatened believed that the threat would be carried out" (Id. ¶¶ 509, 526); (2) by Sergeant Dore (that "on December 13, Jason unlawfully and willfully did resist, delay, and obstruct Sergeant Dore, a public officer in the CCSD, by refusing to comply with orders given to Jason, at the time the officer was discharging and attempting to discharge an official duty by while investigating a disturbance call located at Kloepfer's residence" (Id. ¶ 512); and (3) by Sergeant Dore (that Jason "unlawfully and willfully did resist, delay, and obstruct Sergeant Dore . . . by refusing to comply with orders

deputies arrested Plaintiff and served him with arrest warrants for Communicating Threats and for Resisting a Public Officer and gave him an unsecured bond (Id. ¶ 371); and (5) the charges were dismissed on March 1, 2023. (Id. ¶¶ 373, 518).

Plaintiff does not allege that Defendant Brown was involved in issuing search warrant or arrest warrants. But even if Brown was involved, the criminal judicial process was underway before the December 13 publication at issue and continued until the criminal charges were dismissed on March 1, 2023. In North Carolina, "[t]he general rule is that a defamatory statement made in the due course of a judicial proceeding is absolutely privileged and will not support a civil action for defamation, even though it be made with express malice." Jarman v. Offutt, 239 N.C. 468, 472 (1954). The privilege can apply to trial counsel as well as investigatory counsel. See Topping v. Meyers, 270 N.C. App. 613, 621–22 (2020).

North Carolina courts apply the absolute privilege liberally, holding that to fall outside the privilege, the matter "must be so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety." Scott v. Statesville Plywood & Veneer Co., 240 N.C. 73, 76 (1954). "If it is so related to the subject matter of the controversy that it may become the subject of inquiry in the course of the trial, the rule of absolute privilege is controlling." Id. In Scott, the court concluded the complaint failed to state a claim for libel where it affirmatively appeared on the face of the complaint that the language used by the defendant was from pleadings and other papers connected with and part of a judicial proceedings. This was true regardless of whether the plaintiff's complaint mirrored the judicial proceeding materials or "mere[] innuendoes arising therefrom" and notwithstanding the fact that the libelous statement about the judicial proceedings was published in a newspaper of wide

---

given to Jason . . . while investigating a disturbance call located at Kloepfer's residence." (Id. ¶ 530).

circulation as a part of the proceedings. Id.; see also Wall v. Blalock, 245 N.C. 232, 233 (1956) (affirming dismissal of complaint based on absolute judicial privilege).

The absolute privilege may apply to proposed or pending litigation. See, e.g., Burton v. NCNB Nat'l Bank of North Carolina, 85 N.C. App. 702, 706–07 (N.C. App. 1987) (finding absolute privilege where an attorney's letter containing defamatory statements was relevant to bank's action against alleged guarantor to recover on debt ); see also Pacific Furniture Mfg. Co. v. Preview Furniture Corp. 626 F. Supp. 667, 678–79 (M.D.N.C. 1985) (citing Restatement (Second) of Torts § 586 & comment a (1976); Hoover v. Van Stone, 540 F. Supp. 1118, 1122 (D. Del. 1982) ("the protection afforded by the privilege is absolute; so long as the statement is pertinent to, and made in the course of, a judicial proceeding, even a showing of malice will not divest the statement of its immune status")). Moreover, where an attorney was allegedly involved in a defamatory press release, courts have concluded that absolute immunity applies, even where litigation was not yet filed. See, e.g., Yang v. Lee, 163 F. Supp. 2d 554, 561–62 (4th Cir. 2001) (applying California law) (where the communication was made in serious contemplation of litigation); Mosley v. Observer Pub. Co., 422 Pa. Super. 255 (1993) (applying absolute immunity to attorney's statements in application for search warrant and newspaper's republication of them); Johnson v Cartwright, 355 F.2d 32 (8th Cir. 1966) (applying Iowa law) (holding that an attorney's statements to the press which related to a probable suit involving his client were absolutely privileged).

Here, according to Plaintiffs' allegations, when the statement at issue was allegedly published, a search warrant had been issued by a magistrate, the district attorney had been consulted, and charges were pending. The statement largely mirrors the information provided to Magistrate Postell, which resulted in the issuance of the search order and arrest warrant.

15

Therefore, the statement is not "so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety." Scott, 240 N.C. at 76. As such, the statement is protected by an absolute privilege. See, e.g., Jones v. William H. Coward, 193 N.C. App. 231 (2008) (affirming dismissal of defamation claim against attorney and law firm based on statement made by attorney in judicial proceeding).

The Court further finds that Brown is alternatively entitled to qualified privilege. Qualified privilege is a defense to defamatory publication. Clark v. Brown, 99 N.C. App. 255, 262 (1990). "A defamatory statement is qualifiedly privileged when made (1) on subject matter (a) in which the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right or duty, (3) on a privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. This duty may be public, personal, or private and of a legal, judicial, political, moral, or social nature." Id. (internal citations and quotations omitted). Boston v. Webb, 73 N.C. App. 457, 461 (1985). "If the court determines as a matter of law that the occasion is privileged, defendant has 'a presumption that the statement was made in good faith and without malice.'" Clark, 99 N.C. App. at 262. "To rebut this presumption, the plaintiff must show actual malice." Phillips v. Winston–Salem/Forsyth County Bd. of Educ., 117 N.C. App. 274, 278 (1994). As the Court has already discussed, Plaintiff Kloepfer does not sufficiently allege actual malice by Brown. Thus, the defamation claim against Brown is also barred by qualified immunity.

### IV. CONCLUSION

In sum, the Cherokee County Sheriff's Department is dismissed as a Defendant, the official capacity claims against the individual Defendants are dismissed as redundant, and the individually named Defendants enjoy public official immunity as to the claims for negligence,

negligent infliction of emotional distress, and negligent retention and hiring/supervision. Moreover, as to the official capacity claims against Sheriff Smith, Sheriff Smith enjoys governmental immunity and has not waived immunity through the purchase of liability insurance. Furthermore, Plaintiff Kloepfer's claims against Defendant Brown are dismissed. The punitive damages claim against the Sheriff's Office in its official capacity is also dismissed.

At the time, the Court will deny the motion to dismiss the remaining claims as to all remaining named Defendants so that the parties may proceed to discovery. The parties may re-argue each claim as to each individual Defendant on summary judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Motion to Dismiss, (Doc. No. 21), filed by Defendants Cherokee County Sheriff's Department, Dennis Dore, Adam Erickson, Paul Fry, J.T. Gray, Jason Hall, Justin Jacobs, Don Latulipe, Mitchell Morgan, Drew Payne, Nolan Queen, Dustin Smith, Jessica Stiles, Milton Teasdale, Cody Williams, David Williams, is **GRANTED in PART and DENIED in PART**. The Motion to Dismiss, (Doc. No. 24), filed by Defendant Darryl Brown is **GRANTED**.

Max O. Cogburn Jr
United States District Judge